## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Ron Mercer, Kristi Mercer, Ned
Newhof, Rinda Newhof, and The Fair
Housing Center of West Michigan,

              Plaintiffs,

      v.

Edward Rose & Sons, Inc. d/b/a The
Crossings Apartments and Edward
Rose Company, severally and jointly,

              Defendants.

Case No. _____

Hon. _____
United States District Judge

Jury Trial Requested

## COMPLAINT FOR MONETARY DAMAGES, INJUNCTIVE
## RELIEF AND JURY DEMAND

1.     This lawsuit concerns blatant disability discrimination in violation of the Fair Housing Amendments Act (FHAA) and the analogous Michigan civil rights laws.

2.     Defendants Edward Rose & Sons and their related entities are all domestic corporations with headquarters in Bloomfield Hills, Michigan that own and control the operations of the Crossings Apartments in Grand Rapids, Michigan.

3.     In September of 2020, Plaintiffs Ron and Kristi Mercer and Ned and Rinda Newhof submitted applications through the Crossings Apartments website on behalf of their sons, John Doe 1 and John Doe 2, who are two men in their 20's

1

with disabilities. John Doe 1 and John Doe 2 each have cognitive disabilities; John Doe 2 drives a car and works part-time, and otherwise, both men rely on social security and other public benefits. The two are good friends and were ready for an apartment of their own after having successfully roomed together at Shalom Springs, an independent living facility associated with David's House, which is a non-profit organization serving adults with special needs.

4.     The two young men had done very well living at Shalom Springs and were ready to live independently in an apartment of their own. John Doe 1 and John Doe 2, along with their parents agreed that the Crossings Apartments were perfect; it was a short walk to a movie theater, dining, and shopping, and offered easy access to the highway for John Doe 2 to drive to work.

5.     Ron Mercer contacted the apartment management office and explained that he was applying on behalf of the young men. He explained that the two young men had cognitive disabilities but had proven themselves able to live independently.

6.     However, after their parents submitted the rental application to the Crossings, a representative responded that the application would be rejected because their sons supposedly lacked the income qualifications for the apartment. Ron Mercer replied by explaining all the sources of income available to their sons, but Defendants replied that this would not matter. Ron asked them if the Mercers

and Newhofs could co-sign for the lease, but Defendants rejected this option. Ron suggested that he would pay six months' rent as a security deposition, but Defendants rejected this suggestion. Ron then offered to pay the full lease in advance—over $14,000—and Defendants rejected this suggestion as well. In fact, the property manager that perhaps their sons should stay at their former facility— that David's House "was better equipped" to handle their sons' needs.

7.      In fact, Edward Rose & Sons simply did not want individuals with a disability like John Doe 1 and John Doe 2 to live at their apartment complex. Defendants made no effort to call David's House and see whether the two young men had a history of paying their rent on time—rent that was only $100 less than the rent at the Crossings Apartments. What's more, Defendants lied to the Mercers and Newhofs when they said that they did not allow co-signers for applicants with limited sources of income; when investigators from the Fair Housing Center of West Michigan called and asked at other Edward Rose & Sons properties, they were told that a young person who was only working part-time could indeed have a parent co-sign a lease.

8.      Defendants rejected the application submitted by the Mercers and the Newhofs for their sons to rent an apartment because they did not want these young men who have disabilities living in their apartment complex.

3

9.     And when Defendants rejected Ron Mercer's many different suggestions of how they might waive the income requirement—which is readily done for individuals without disabilities by allowing a co-signer—they unlawfully denied persons a reasonable accommodation that would have allowed John Doe 1 and John Doe 2 the ability to enjoy a perfect apartment close to food and shopping, not to mention a movie theater, which is one of their favorite things to do together.

10.     The Fair Housing Center of West Michigan (FHCWM) is a non-profit organization established to enforce the Federal and State Fair Housing laws in a twelve-county area that includes the Western part of Michigan and the Upper Peninsula. The FHCWM staff expended significant staff time and resources to investigate the above-described events. These blatant acts of discrimination by Defendants directly obstructs and frustrates the FHCWM's mission to end housing discrimination.

11.     Therefore, Plaintiffs bring this lawsuit seeking damages and injunctive relief against Defendants.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction of the federal claim asserted in this action under 28 U.S.C. § 1331 because the action arises under the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 *et seq*.

13.    Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. § 1343 because Plaintiffs seek damages and equitable relief under an Act of Congress providing for the protection of civil rights.

14.    This Court may also exercise supplemental jurisdiction over the state-law claims of this lawsuit because these claims are so related to the federal civil rights claims that they form part of the same case or controversy. 28 U.S.C. § 1367.

15.    Venue is proper under 28 U.S.C. § 1391 because Defendants reside in the Eastern District of Michigan.

16.    Plaintiffs' claims are timely under the Fair Housing Act and the Persons with Disabilities Civil Rights Act and there are no administrative prerequisites for filing this action.

## PARTIES

17.    Plaintiffs Ron and Kristi Mercer are Michigan residents and hold a power of attorney to handle the financial concerns of their son, John Doe 1, who is a 24-year-old man whose disabilities include Autism Spectrum Disorder, Attention Deficit Hyperactivity Disorder, and General Anxiety Disorder.

18.    Plaintiffs Ned and Rinda Newhof are Michigan residents and are the parents of John Doe 2, who is a 26-year-old man with cognitive impairments.

5

19.     Plaintiff, the Fair Housing Center of West Michigan ("FHCWM"), is a nonprofit organization, incorporated in the State of Michigan under 501(c)(3) of the tax code, dedicated to enforcing the fair housing laws and combatting housing discrimination in the counties of Allegan, Grand Traverse, Ionia, Isabella, Kent, Mecosta, Montcalm, Muskegon, Newaygo, Oceana, Osceola, and Ottawa, Michigan.

20.     Defendant, Edward Rose Company is the owner of the Crossings Apartments in Grand Rapids, Michigan and is a Michigan corporate entity headquartered in Bloomfield Hills, Michigan.

21.     Defendant, Edward Rose & Sons, Inc. is a Michigan corporate entity that controls the operations of the Crossings Apartments in Grand Rapids, Michigan and is headquartered with its principal place of business in Bloomfield Hills, Michigan.

## FACTS

22.     John Doe 1 is a 24-year-old man with psychological and cognitive impairments.

23.     Ron and Kristi Mercer maintain a power of attorney to manage the financial matters of their son, John Doe 1.

24.     John Doe 2 is a 24-year-old man with a cognitive impairment.

25.     Ned and Rinda Newhof assist their son, John Doe 2, with his financial matters, even though he is able to work part-time and volunteer.

26.     Both John Doe 1 and John Doe 2 receive Social Security payments and Medicaid, while John Doe 1 also receives Michigan supplemental aid and nutritional benefits.

27.     John Doe 1 and John 2 have been friends since secondary school.

28.     Between mid-October of 2019 to mid-October of 2020, the two men shared an independent-living apartment together at Shalom Spring in Wyoming Michigan, which is affiliated with David's House Ministries, a non-profit that provides services to adults with special needs.

29.     The two men and their parents, having come to the decision that they were able to live entirely independently, decided to find an apartment in Grand Rapids that would be closer to their parents but also afford them the ability to walk to the movies and to restaurants and shopping.

30.     The families identified the Crossings Apartments at 1414 Eastport Drive SE in Grand Rapids, as a perfect location for their sons and confirmed that they had two-bedroom units available to rent for just under $100 more each than their apartment at Shalom Springs had cost.

31.     The two men were able to afford this apartment through their monthly income.

32.    On August 31, 2020 the Ron Mercer paid a $20 application fee online on behalf of their son, John Doe 1, and received an email confirmation from Edward Rose Property Management.

33.    On September 11, 2020, Rinda Newhof contacted the Crossings Apartments and spoke with an employee named Ericka, to whom she provided the application materials for her son, John Doe 2, to rent an apartment together with John Doe 1.

34.    On or about September 14, 2020, "Ericka" from the Crossings called the Mercer home and expressed surprise to be speaking to Ron Mercer rather than his son about the apartment application.

35.    Ron Mercer explained to Ericka that John Doe 1 and John Doe 2 had special needs.

36.    In response, Ericka stated that the Crossings has a requirement that its renters demonstrate that they have income at least equal to three times the rent of the apartment.

37.    Later that day, Ericka called Ron Mercer back to tell him that John Doe 1 would not qualify for the apartment.

38.    Ericka also shared with Ron Mercer that she thought Shalom Springs would be "more equipped to handle people like that" than the Crossings Apartments.

39.     Ron Mercer understood Ericka's comments to be a direct expression of animus and bias against people like his son and John Doe 2 because they have cognitive disabilities.

40.     On September 15, 2020, Ron Mercer emailed additional paperwork documenting his son's income.

41.     In this email. Ron Mercer also plainly asked for a reasonable accommodation to Defendants' purported policy that their sons' income was insufficient to pass the third-party provider's income test.

42.     Ron Mercer explained that the men had already given notice to their then landlords that they were intending to move out, had successfully paid their rent on time each month, and that this rent was only $99.50 more per tenant than their rent at Shalom Springs.

43.     Ron Mercer offered in writing that the parents would "be glad to co-sign for their apartment guaranteeing their payment."

44.     Ron Mercer also offered to provide a "security deposit equivalent to 6 months' rent ($7,074.00) for a period of the 15-month lease.

45.     On September 16, 2020, Ron Mercer spoke with Ericka, who informed him that the additional financial information did not change their rejection.

46.     Ron Mercer also spoke with Rachyl Parker, Ericka's supervisor and the property manager for the Crossings Apartment, and she too refused to consider his requests for an accommodation to this purported financial requirement policy.

47.     On September 17, 2020, Ericka wrote an email to Ron Mercer saying that "after considering the additional assets" for John Doe 1, the application is still declined.

48.     Upon information and belief, Defendants never submitted the Mercer and Newhof applications to their third-party provider and instead rejected the applications out-of-hand.

49.     Also on September 17, 2020, Ron Mercer responded to Ericka's email suggesting that the families would prepay the entire 15 months of rent, $14,148, in order to secure the lease for their sons.

50.     Ron Mercer called the Crossings to follow up, asking if he could sign the lease and allow his son to live there, and Defendants also refused this request.

51.     In response, Rachyl Parker, the property manager, responded with an email saying "we understand that you were trying to be creative with other options for qualifications. However, in order to operate as a community following Fair Housing protocol, the policies for approval must remain consistent with the set standards for all applicants."

52.     Ms. Parker's statement does not reflect Fair Housing laws, as Defendants may not refuse reasonable accommodations to their policies and practices if it is necessary to afford an individual with a disability an equal opportunity to enjoy a residence. 42 U.S.C. § 3604(f)(3)(C); M.C.L. § 27.1506a(b).

53.     Also on September 17, 2020, Ron Mercer spoke with Melany Metzger at Shalom Springs and confirmed that no one from the Crossings had called to inquire about the men's ability to pay their rent or live independently before rejecting their application.

54.     Having been rejected by Defendants and with their 30-day notice to vacate Shalon Springs already tendered, the Mercer and Newhof families became more desperate to find a new apartment.

55.     On or about October 17, 2020, the two men moved into their parents' homes.

56.     On or about October 19, 2020, Defendants sent Plaintiffs check refunding their $20 application fees.

57.     However, the application information on Defendants' website indicates that the application fee is "non-refundable".

58.     Under information and belief, this refund further demonstrates that Defendants did not submit Plaintiffs' applications to their third-party evaluator and instead simply rejected the application because of the men's disabilities.

59.     On or about October 20, 2020, the parents found a two-bedroom condominium for sale near the Newhof home.

60.     The families agreed to purchase this condominium for their sons, with Ned and Rinda buying the condominium and John Doe 1 paying $550 rent plus half the electric bill to the Newhofs each month.

61.     In the latter part of December 2020, the two men moved into this condominium unit.

62.     On October 14, 2020, Ron Mercer contacted the Fair Housing Center of West Michigan explaining the unlawful discrimination they experienced from Defendants.

63.     The Fair Housing Center conducted research on the Crossings Property, identifying the owners of the property and then evaluating what enforcement methods would be most appropriate to evaluate this instance of discrimination and whether Defendants had a pattern and practice of discrimination against persons with disabilities.

64.     In November of 2020, the Fair Housing Center conducted investigative testing of other properties owned and operated by Defendants to see if Defendants allowed any applicants with limited income to have co-signers guarantee a rental application.

65.    The Fair Housing Center's investigation concluded that individuals such as college students with minimal income could have parents co-sign a lease.

66.    The Fair Housing Center concluded from its investigation that the Crossings, as an Edward Rose & Sons property, also allows co-signers for applicants with lower incomes.

67.    The purported reason that Defendants gave to Plaintiffs for denying their sons' applications—that their income was insufficient—was a pretext for unlawful discrimination against persons with disabilities, since other similarly situated applicants without disabilities are allowed to have a co-signer guarantee their lease.

68.    The Mercer and Newhof families were both financially qualified to co-sign their sons' leases and guarantee the rent.

69.    By April of 2021, the Fair Housing Center has expended over 50 hours of staff time and confidential testers' time to investigate the complaint brought to them and evaluate whether Defendants have a pattern and practice of discrimination against applicants who are persons with disabilities.

70.    As a result of Defendants' unlawful actions, Ron and Kristi Mercer have been deeply hurt emotionally to experience first-hand the cruel and close-minded discrimination against their son because of his disability and they have had to watch their son suffer profound disappointment at being told that the perfect

apartment they had found fell through—the one that would have allowed him and his best friend to live around other people their age and in walking distance to the movies, their church, and some favorite restaurants.

71.    As a result of Defendants' unlawful actions, Ned and Rinda Newhof have been deeply hurt emotionally to experience first-hand the cruel and close-minded discrimination against their son because of his disability and they have had to watch their son suffer profound disappointment at being told that the perfect apartment they had found fell through.

72.    Rinda Newhof has lost a great deal of sleep and suffered other emotional and physical distress over seeing her son being treated "less than" others living around him.

## FIRST CAUSE OF ACTION

### Federal Fair Housing Amendments Act
### 42 U.S.C. 3601 et seq., the Fair Housing Act as amended

73.    Plaintiffs reallege and incorporate by reference here all of the above allegations.

74.    The Fair Housing Amendments Act (FHAA) prohibits landlords and property managers from discriminating against or otherwise making housing unavailable because of a disability, discriminating in the terms and conditions of housing based on a disability; making statements that express a preference, limitation or discrimination based on a disability; unlawfully inquiring as to a

disability; and making false representations regarding availability of housing based on handicap. 42 U.S.C. § 3604(c), (d), (f)(1) & (f)(2).

75.     The Mercers' and Newhofs' sons are persons with disabilities as defined by the FHAA.

76.     The FHAA protects the rights of Ron and Kristi Mercer and Ned and Rinda Newhof because they are closely associated with persons having a disability and because they suffered injuries as a result of Defendants' discriminatory conduct and adverse actions taken against their sons. 42 U.S.C. § 3604(f)(1)(C)-(f)(2)(C); M.C.L. § 37.1502(1); 24 C.F.R. §§ 100.202(a)(3), (b)(3), (c) & 100.65.

77.     At all relevant times to this Complaint, Defendants owned and operated the Crossings Apartments.

78.     By direct statement, Defendants' employee acknowledged to Ron Mercer that Defendants did not want John Doe 1 and John Doe 2 to live at the Crossings Apartments because their former landlord was "better equipped to handle people like that"—meaning adults with cognitive and/or psychological disabilities.

79.     Ron Mercer made multiple requests for reasonable accommodations to Defendants' supposed income-limit rule but was told none of them were availing to him.

80.     This response by Defendants was a lie, because they do allow others with limited financial resources to apply for a lease with a co-signer, they did not even call Shalom Springs to ask about the men's payment or conduct history, and because they did not even run the application through their third-party system.

81.     Defendants used the falsehood that the men's income did not qualify as a pretext while the true reason for rejecting their application was discriminatory animus against persons with disabilities.

82.     Defendants' unlawful rejection of the Mercer and Newhof families' applications has caused the following injuries:

     a.    The pain and anguish of being exposed to base discriminatory animus against their sons;

     b.    The pain and anguish of having to disappoint their sons by telling them they could not live in the apartment that they loved;

     c.    Moving expenses, first to move their sons back home and then to a condominium they purchased;

83.     Defendant's actions have also injured Plaintiff Fair Housing Center of West Michigan by forcing the Fair Housing Center to incur administrative costs and divert its scarce resources. To address the Defendant's discrimination, FHCWM committed resources to investigate the complaint and then test for

systemic discrimination at a number of other apartments in the region owned and run by Defendants.

84.    In the absence of the Defendant's discriminatory conduct, FHCWM would have devoted its scarce time and resources to other activities, such as providing training to housing providers and education on fair housing laws to individuals who may be the victims of housing discrimination.

85.    Defendants' conduct in rejecting the Mercer and Newhof applications was taken knowingly and in reckless disregard of the rights of John Doe 1 and John Doe 2 as persons with disabilities to have the equal opportunity to enjoy an apartment home.

**SECOND CAUSE OF ACTION**

**Failure to Allow a Reasonable Accommodation in Violation of the Fair Housing Act, 42 U.S.C. § 3604(e)(3)(B)**

86.    Plaintiffs reallege and incorporate by reference here all of the above allegations.

87.    It is a violation of the Fair Housing Amendments Act to refuse to make a reasonable accommodation in rules, policies or practices when such an accommodation may be necessary to afford a person with a disability the equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(e)(3)(B).

88.    The Mercers' and Newhofs' sons are persons with disabilities.

89.    Their sons primarily rely on fixed incomes provided by Social Security and other public benefits to them as persons with disabilities.

90.    These two men are nonetheless able to afford the rent for the apartment at the Crossings that they had hoped to rent.

91.    The Mercers and Newhofs asked Defendants for a reasonable accommodation that would allow them an equal opportunity to enjoy the apartment: namely, that they make an exception to their income requirements to allow the two men to rent the apartment.

92.    Specifically, Ron Mercer suggested the following accommodations, all of which were reasonable: allowing the parents to co-sign the lease as guarantors, accepting a security deposit equal to six months' rent, and even accepting pre-payment of the full 15 months of rent.

93.    Defendants categorically rejected each of these reasonable suggestions.

94.    Defendants were aware that John Doe 1 and John Doe 2 are persons with disabilities at the time they refused these requests for accommodations.

95.    By contrast, Defendants will readily allow a person such as a college student with limited income to have a parent co-sign a lease.

96.    Defendants' unlawful rejection of the Mercer and Newhof families' requests for reasonable accommodations has caused the following injuries:

18

d.      The pain and anguish of being exposed to base discriminatory animus against their sons;

e.      The pain and anguish of having to disappoint their sons by telling them they could not live in the apartment that they loved;

f.      Moving expenses, first to move their sons back home and then to a condominium they purchased;

97.    Defendant's actions have also injured Plaintiff Fair Housing Center of West Michigan by forcing the Fair Housing Center to incur administrative costs and divert its scarce resources. To address the Defendant's discrimination, FHCWM committed resources to investigate the complaint and then test for systemic discrimination at a number of other apartments in the region owned and run by Defendants.

98.    In the absence of the Defendant's discriminatory conduct, FHCWM would have devoted its scarce time and resources to other activities, such as providing training to housing providers and education on fair housing laws to individuals who may be the victims of housing discrimination.

99.    Defendants' conduct in refusing he Mercers and Newhofs' requests for a reasonable accommodation was knowing and in reckless disregard of the

rights of John Doe 1 and John Doe 2 as persons with disabilities to have the equal opportunity to enjoy an apartment home.

## THIRD CAUSE OF ACTION

### Persons with Disabilities Civil Rights Act, MCL §§ 37.1101-1607 ("PDCRA")

1.     Plaintiffs reallege and incorporate by reference here all of the above allegations.

2.     The PDCRA prohibits owners, landlords and property managers from discriminating against or otherwise making housing unavailable based on disability; discriminating in the terms and conditions of housing based on disability; making statements that express a preference, limitation or discrimination based on disability; unlawfully inquiring as to disability; and making false representations regarding availability of housing based on disability. MCL 37.1502.

3.     At all relevant times to this Complaint, Defendants owned and operated the Crossings Apartments.

4.     John Doe 1 and John Doe 2 are persons with disabilities as defined by the PDCRA.

5.     Ron and Kristi Mercer and Ned and Rinda Newhof are protected by the PDCRA because they are the immediate family of persons having a disability

and because they suffered injuries as a result of Defendants' discriminatory conduct and adverse actions taken against their sons.

6.      At all relevant times to this Complaint, Defendants owned and operated the Crossings Apartments.

7.      By direct statement, Defendants' employee acknowledged to Ron Mercer that Defendants did not want John Doe 1 and John Doe 2 to live at the Crossings Apartments because their former landlord was "better equipped to handle people like that"—meaning adults with cognitive and/or psychological disabilities.

8.      Ron Mercer made multiple requests for reasonable accommodations to Defendants' supposed income-limit rule but was told none of them were available to him.

9.      This response by Defendants was a lie, because they do allow others with limited financial resources to apply for a lease with a co-signer, they did not even call Shalom Springs to ask about the men's payment or conduct history, and because they did not even run the application through their third-party system.

10.      Defendants used the falsehood that the men's income did not qualify as a pretext while the true reason for rejecting their application was discriminatory animus against persons with disabilities.

21

11.    Defendants' unlawful rejection of the Mercer and Newhof families' applications has caused the following injuries:

    a.  The pain and anguish of being exposed to base discriminatory animus against their sons;

    b.  The pain and anguish of having to disappoint their sons by telling them they could not live in the apartment that they loved;

    c.  Moving expenses, first to move their sons back home and then to a condominium they purchased;

12.    Defendant's actions have also injured Plaintiff Fair Housing Center of West Michigan by forcing the Fair Housing Center to incur administrative costs and divert its scarce resources. To address the Defendant's discrimination, FHCWM committed resources to investigate the complaint and then test for systemic discrimination at a number of other apartments in the region owned and run by Defendants.

13.    In the absence of the Defendant's discriminatory conduct, FHCWM would have devoted its scarce time and resources to other activities, such as providing training to housing providers and education on fair housing laws to individuals who may be the victims of housing discrimination.

14.    Defendants' conduct in rejecting the Mercer and Newhof applications was taken knowingly and in reckless disregard of the rights of John Doe 1 and

John Doe 2 as persons with disabilities to have the equal opportunity to enjoy an apartment home.

## FOURTH CAUSE OF ACTION
### Failure to Provide a Reasonable Accommodation in Violation of the Persons with Disabilities Civil Rights Act, M.C.L. § 37.1506a

100.   Plaintiffs reallege and incorporate by reference here all of the above allegations.

101.   It is a violation of the Persons with Disabilities Civil Rights Act to refuse to make a reasonable accommodation in rules, policies or practices when such an accommodation may be necessary to afford a person with a disability the equal opportunity to use and enjoy a dwelling. M.C.L. § 1506a.

102.   The Mercers' and Newhofs' sons are persons with disabilities.

103.   Their sons primarily rely on fixed incomes provided by Social Security and other public benefits to them as persons with disabilities.

104.   These two men are nonetheless able to afford the rent for the apartment at the Crossings that they had hoped to rent.

105.   The Mercers and Newhofs asked Defendants for a reasonable accommodation that would allow them an equal opportunity to enjoy the apartment: namely, that they make an exception to their income requirements to allow the two men to rent the apartment.

106.   Specifically, Ron Mercer suggested the following accommodations, all of which were reasonable: allowing the parents to co-sign the lease as guarantors, accepting a security deposit equal to six months' rent, and even accepting pre-payment of the full 15 months of rent.

107.   Defendants categorically rejected all of these reasonable suggestions.

108.   Defendants were aware that John Doe 1 and John Doe 2 are persons with disabilities at the time they refused these requests for accommodations.

109.   By contrast, defendants will readily allow a person such as a college student with limited income to have a parent co-sign a lease.

110.   Defendants' unlawful rejection of the Mercer and Newhof families' requests for reasonable accommodations has caused the following injuries:

    a.   The pain and anguish of being exposed to base discriminatory animus against their sons;

    b.   The pain and anguish of having to disappoint their sons by telling them they could not live in the apartment that they loved;

    c.   Moving expenses, first to move their sons back home and then to a condominium they purchased;

111.   Defendant's actions have also injured Plaintiff Fair Housing Center of West Michigan by forcing the Fair Housing Center to incur administrative costs and divert its scarce resources. To address the Defendant's discrimination,

FHCWM committed resources to investigate the complaint and then test for systemic discrimination at a number of other apartments in the region owned and run by Defendants.

112.   In the absence of the Defendant's discriminatory conduct, FHCWM would have devoted its scarce time and resources to other activities, such as providing training to housing providers and education on fair housing laws to individuals who may be the victims of housing discrimination.

113.   Defendants' conduct in refusing he Mercers and Newhofs' requests for a reasonable accommodation was knowing and in reckless disregard of the rights of John Doe 1 and John Doe 2 as persons with disabilities to have the equal opportunity to enjoy an apartment home.

## REQUEST FOR RELIEF

Plaintiffs request that the Court grant them the following relief:

A.    Issue an Order granting Plaintiffs' request for declaratory relief, finding that the Defendants' actions violated the FHAA and the PDCRA;

B.    Issue an Order preliminarily and permanently enjoining Defendants, their agents, employees and successors, and all other persons in active concert or participation with Defendants from further discrimination on grounds of disability in any aspects of their residential real estate transactions;

C.      Grant affirmative relief as may be necessary to remedy Defendants'
past discriminatory practices and decisions and to ensure Defendants do not
discriminate on grounds of disability in the future, including, but not limited to,
requiring Defendants and their agents to undergo fair housing training to ensure
compliance with state and federal fair housing laws and regulations;

D.      Enter a judgment awarding actual and compensatory damages to
compensate Plaintiffs for their economic losses, as well as compensation for
physical and emotional distress, lost housing opportunities, violation of their civil
rights, humiliation and embarrassment, and other damages they have suffered as a
result of Defendants' violation of the FHA and PDCRA;

E.      Enter a judgment awarding punitive damages to Plaintiffs as a
reflection of Defendants' blatant, intentional, and deliberate violations of the rights
of individuals with disabilities in violation of the FHAA;

F.      Award Plaintiffs their reasonable attorneys' fees and costs.

G.      Award any other relief as it deems just and equitable.

**PITT, McGEHEE, PALMER,
BONANNI & RIVERS, P.C.**

By:   /s/Robin B. Wagner
        Beth M. Rivers (P33614)
        Robin B. Wagner (P79408)
        Attorneys for Plaintiff
        117 W. Fourth Street, Suite 200
        Royal Oak, MI 48067
        Tel: (248) 398-9800
        Fax: (248) 268-7996
        brivers@pittlawpc.com
        rwagner@pittlawpc.com

Dated:  June 7, 2021

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

**PITT, McGEHEE, PALMER,
BONANNI & RIVERS, P.C.**

By:   /s/Robin B. Wagner
      Beth M. Rivers (P33614)
      Robin B. Wagner (P79408)
      Attorneys for Plaintiff
      117 W. Fourth Street, Suite 200
      Royal Oak, MI 48067
      Tel: (248) 398-9800
      Fax: (248) 268-7996
      brivers@pittlawpc.com
      rwagner@pittlawpc.com

Dated:  June 7, 2021

JS 44 (Rev. 11/15)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Ron Mercer, Kristi Mercer, Ned Newhof, Rinda Newhof, and The Fair Housing Center of West Michigan,

## DEFENDANTS

Edward Rose & Sons, Inc. d/b/a The Crossings Apartments and Edward Rose Company,

**(b)** County of Residence of First Listed Plaintiff    Kent
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Oakland
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Robin B. Wager (P79408)
117 W. 4th Street, Ste. 200
Royal Oak, MI 48067
(248) 398-9800

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☒ 443 Housing/ Accommodations | ☐ 530 General | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | |
| | | ☐ 555 Prison Condition | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 3601

Brief description of cause:
Violation of Fair Housing Amendments Act

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   June 7, 2021

SIGNATURE OF ATTORNEY OF RECORD
s/ Robin B. Wagner

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____