UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RON MERCER, KRISTI MERCER,
NED NEWHOF, RINDA NEWHOF, and
THE FAIR HOUSING CENTER OF WEST
MICHIGAN,

        Plaintiffs,                      Case No. 21-11336

v.                                          Honorable Nancy G. Edmunds

EDWARD ROSE & SONS, INC. d/b/a
THE CROSSINGS APARTMENTS and
EDWARD ROSE COMPANY,

        Defendants.
_____/

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [59]; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [66]; AND DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND THEIR COMPLAINT [74]**

Plaintiffs bring claims under the Fair Housing Amendments Act ("FHAA") and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA") as a result of the denial of a lease application submitted on behalf of two men in their twenties who have mental and cognitive impairments. The matter is before the Court on (1) Plaintiffs' motion for partial summary judgment (ECF No. 59), (2) Defendants' motion for summary judgment (ECF No. 66), and (3) Plaintiffs' motion for leave to amend their complaint to add and drop defendants (ECF No. 74). All three motions have been fully briefed. (ECF Nos. 64, 65, 67-71, 75, 78, 79, 81-84.) Pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), the motions will be decided on the briefs and without oral argument. For the reasons below, the Court DENIES Plaintiffs' motion for partial summary judgment, GRANTS

1

Defendants' motion for summary judgment, and DENIES Plaintiffs' motion for leave to amend.

## I. Background

Plaintiffs Ron and Kristi Mercer are the parents of Doe Mercer and Plaintiffs Ned and Rinda Newhof are the parents of Doe Newhof. Doe Mercer and Doe Newhof are men in their twenties who have mental and cognitive impairments. The parents hold powers of attorney to assist them in conducting some of their life activities. Plaintiff The Fair Housing Center of West Michigan is a non-profit corporation that receives federal, state, and local grants in part to investigate complaints of fair housing violations and undertake testing and other efforts to enforce the federal fair housing laws. The Crossings is a 660-unit Edward Rose property located in the Grand Rapids area.

Doe Mercer is a student working on skills that may lead to his ability to hold a low-skill job in the future. He receives Supplemental Security Income as well as food supplemental income and other state benefits. Doe Newhof can drive a car for limited purposes and is employed at a grocery store bagging, taking carts in, and cleaning restrooms. He receives Social Security Disability Insurance benefits and is part of the "Ticket to Work" program, which means that "the work he has been doing does not show that he can do substantial work," that he may work and receive SSDI benefits at the same time, and that his SSDI income is protected from disqualification during periods when he is able to earn income that may temporarily reduce his SSDI payments. (ECF Nos. 59-14, 59-15.)

Does Newhof and Mercer became friends in high school. Their parents' goal is for them to live as independently as possible. Thus, they moved out of their parents'

homes and from October of 2018 until the Fall of 2020 shared an apartment at a complex called Shalom Springs. Because that lease was ending and the parents preferred that the two men live closer to them, they began looking for new housing. On August 31, 2020, Plaintiffs Rinda Newhof and Kristi Mercer toured the Crossings. They believe they were escorted by Rachyl Parker, the property manager of the Crossings at the time, and recall informing her of their sons' disabilities. That day, the parents completed and submitted online applications under their sons' names to rent a two-bedroom, two-bathroom apartment, unit 1307-3a, at the Crossings, which cost $1,179 per month. The application did not include an indication that it was submitted on behalf of two individuals with disabilities nor did it note that the parties had toured the complex. This application was processed two weeks later by the leasing coordinator, Ericka Crosby, who submitted all of the information to a third party computer system.[1]

After processing the application, on September 14, 2020, Crosby called the number provided for Doe Mercer to advise him that the application was declined for insufficient income. She spoke to Ron Mercer, who explained he had a power of attorney for his son. (ECF No. 67-3.) Crosby asked Ron why they were applying for one of the more expensive units and suggested they consider a less expensive unit. Ron testified that he declined this offer because he "wanted [his] son in a nice place" with two bathrooms. (*Id.* at PageID.3868.) Ron testified that Crosby stated that Shalom Springs "may be more equipped to handle people like that," referring to Does Mercer and Newhof. (*See id.* at PageID.3874.) Crosby asked Ron to submit all documents

---

[1] Plaintiffs note that the company standard practice is to process all applications within twenty-four hours of receipt.

3

concerning his son's income. Ron sent an email on September 15 with that information and stated, "we recognize that [our] application is not typical for processing, but simply ask that a full review of their situation be considered." (*Id.* at PageID.3948.) He explained that his son had no health insurance or car expenses and is a full-time student. He further noted that Shalom Springs required independent living and the two men were never late on a payment there, which was only $99.50 less per roommate than the rent for the proposed apartment at the Crossings. Ron Mercer stated that the parents would "be glad to co-sign for their apartment guaranteeing their payment" or that he "would be willing to provide a security deposit equivalent to 6 months' rent ($7,074.00) for a period of the 15-month list." (*Id.*) He concluded by stating "we'd really like these fine young men to have an opportunity to live in your community. We would hope there would be no [sic] any other reason than financial for your management to reject their application for housing." (*Id.*)

On September 16, Crosby called Ron Mercer to inform him that despite the additional financial information provided, the application was still denied. Crosby placed a note in the contact management system, indicating that Ron Mercer was unhappy to learn that the application was still denied and she had him speak to Parker because he "mentioned that [they] were discriminating." When Ron spoke to Parker, he offered to be a co-signer or pay the rent up front.

On September 17, Crosby emailed Ron Mercer to inform him that the application was still denied. (ECF No. 67-3, PageID.3949.) He responded with an email expressing his disappointment and noting he had offered to pay the rent up front. (*Id.*) Parker responded by stating that, "We understand that you are trying to be creative with other

4

options for qualification. However, in order to operate as a community following Fair Housing protocol, the policies for approval must remain consistent with the set standards for all applicants." (*Id.* at PageID.3991.)

The Crossings has a "Declined Applications" policy stating that when an application is denied due to poor or insufficient credit or because of insufficient income or assets, the following steps can be taken: (1) "[b]e sure to list all sources of income and assets on the Lease Application;" (2) "[c]onsider a less expensive apartment;" (3) add a roommate to the application; (4) correct any errors in the credit report; or (5) contact the Property Manager at the community or the Regional Manager, and that "[e]xceptions may be made for individuals with disabilities or for applicants who have a positive rental history at a community managed by the Kalamazoo Office of Edward Rose and Sons." (ECF No. 59-25.) The record shows that exceptions have been made in certain cases. (ECF No. 78-30.) Plaintiffs note that Parker did not escalate their request to the Regional Manager to consider whether an exception was appropriate here. Defendants note that Crosby suggested considering a less expensive unit consistent with this policy and that Does Newhof and Mercer would have qualified for certain two-bedroom, one bathroom units as well as a less expensive two-bedroom, two bathroom unit that was available at the time. (ECF No. 64-15, PageID.2395-96.)

The Newhofs later purchased a condominium and rented it to Does Mercer and Newhof. The parents testified that they suffered emotional distress as a result of the denial of the application and were disappointed due to the lost opportunities that would have been associated with living at the Crossings due to the location and the provided maintenance services.

Defendants note that Doe Newhof has been consistently employed since 2013, except for a period of unemployment from December 19, 2019 until October 27, 2020. (ECF No. 64-8.) Plaintiffs have explicitly stipulated that Doe Newhof's termination from his job in December 2019 as well his temporary period of unemployment in 2020 were not because of his cognitive impairment. (*Id.*) Defendants aver that had the application been submitted once Doe Newhof gained new employment, Does Mercer and Newhof would have had sufficient income to qualify for the selected unit.

Plaintiffs allege violations of the FHAA (Count I) and the PWDCRA (Count III) and failure to accommodate under the FHAA (Count II) and the PWDCRA (Count IV). Plaintiffs move for summary judgment on their failure to accommodate claims and Defendants move for summary judgment on all of Plaintiffs' claims.

## II.     Summary Judgment Standard

Summary judgment under Federal Rule of Civil Procedure 56(a) is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When reviewing the record, "'the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'" *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (quoting *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). Furthermore, the "'substantive law will identify which facts are material,' and 'summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden "of establishing the 'absence of evidence to support the

nonmoving party's case.'" *Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once the moving party has met its burden, the nonmoving party 'must present affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor.'" *Id.* at 839 (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403 (6th Cir. 1992)). The standard of review for cross-motions for summary judgment "does not differ from the standard applied when a motion is filed by only one party to the litigation." *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).

## III. Analysis

### A. Threshold Matters

Defendants first argue that this case should be dismissed because they do not have any ownership, financial, or operational interest in the Crossings.[2] But Defendants admit that the Crossings is a property "within the Edward Rose & Son's family of companies" (ECF No. 64-2, PageID.1424) and have provided extensive briefing and evidence with regard to this case. Thus, the Court declines to grant summary judgment in favor of Defendants on this basis and will address Plaintiffs' claims on the merits.

Defendants also argue that the parents do not have standing to bring this case. However, standing under the FHAA is defined "broadly." *See Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 197 (2017). A plaintiff need not be the victim of the complained

---

[2] In response to this argument, Plaintiffs move for leave to amend their complaint to add and drop defendants in this case. Because the Court ultimately finds that Defendants are entitled to summary judgment on the merits, that request is DENIED as moot. If Plaintiffs were entitled to partial summary judgment or if their claims were to survive Defendants' motion, granting leave to amend would have been appropriate.

discrimination to have standing as long as he or she suffered some "distinct and palpable injury." *See Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 544 (6th Cir. 2014) (internal quotations and citation omitted). In light of the parents' allegations regarding have suffered emotional distress, they have standing here.

### B. Failure to Accommodate Claims

Under the FHAA, a housing provider's "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling" is unlawful. 42 U.S.C. § 3604(f)(3)(B). The PWDCRA includes a nearly identical provision. *See* Mich. Comp. Laws § 37.1506a(1)(b). To establish their failure to accommodate claims, Plaintiffs must prove that: (1) the individual seeking housing has a disability; (2) the defendant knew or reasonably should have known of the disability; (3) the requested accommodation may be necessary to afford an equal opportunity to use and enjoy the dwelling; (4) the accommodation is reasonable, and (5) the defendant refused to make the accommodation.[3] *See Dayton Veterans Residences Ltd. P'ship v. Dayton Metro. Housing Auth.*, No. 21-3090, 2021 U.S. App. LEXIS 34511, at *18 (6th Cir. Nov. 19, 2021) (citation omitted); *Bachman v. Swan Harbour Ass'n*, 653 N.W.2d 415, 428 (Mich. Ct. App. 2002). Defendants raise arguments regarding all but the second element.

---

[3] Reasonable accommodation claims under the FHAA do not require proof of discriminatory intent. *Hollis*, 760 F.3d at 540. Thus, the *McDonnell Douglas* test is inapplicable to such claims. *Id.*

### 1. Whether Doe Newhof is Disabled

Defendants do not dispute that Doe Mercer is disabled but argue that Doe Newhof is not disabled for purposes of the FHAA. The FHAA defines a "handicap" as: "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h). A person's "major life activities" include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 24 C.F.R. § 100.201(b). Defendants note that there is evidence that Doe Newhof works, drives a car, and lives independently. But Plaintiffs have presented evidence demonstrating that he was found disabled by the Social Security Administration. Moreover, a neuropsychological evaluation found that his "IQ and general ability levels were measured at the 1st or 2nd percentile relative to the general population. These scores are in the extremely low category of functioning" and "[t]his very low level of intellectual capacity clearly limits all other capacities such as learning ability, social skills, and executive functions." (ECF No. 75-1.) Thus, Plaintiffs have established the first element of their failure to accommodate claims with regard to Doe Newhof.

### 2. Whether the Requested Accommodation was Necessary

Defendants next contest the necessity of the requested accommodation. The necessity element is "'a causation inquiry that examines whether the requested accommodation or modification would redress injuries that otherwise would prevent a disabled resident from receiving the same enjoyment from the property as a non-disabled person would receive.'" *Madej v. Maiden*, 951 F.3d 364, 371 (6th Cir. 2020)

(quoting *Hollis*, 760 F.3d at 541). "In other words, 'necessity functions as a but-for causation requirement, tying the needed accommodation to equal housing opportunity.'" *Id.* at 371 (quoting *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 110 (3d Cir. 2018)).

Defendants first argue that the requested accommodation was not necessary because Does Mercer and Newhof could have met the Crossing's income requirement for their desired unit without an accommodation if they had applied a few months later (after Doe Newhof started his new job). Plaintiffs correctly note that accommodations may adjust for the effects or practical impacts of a disability, which could include the inability to work. But while "economic hardship may result from a disability . . . , inquiry must be on a case by case basis." *See Sutton v. Freedom Square Ltd.*, No. 07-14897, 2008 U.S. Dist. LEXIS 81600, at *14 (E.D. Mich. Oct. 15, 2008), *aff'd sub nom. Sutton v. Piper*, 344 F. App'x 101 (6th Cir. 2009). Here, the record shows that even though Doe Newhof is not capable of "substantial work," he has been consistently employed since 2013, except for a period of unemployment from December 19, 2019 until October 27, 2020. (ECF No. 64-8.) And Plaintiffs have explicitly stipulated that Doe Newhof's termination from his job in December 2019 as well his temporary period of unemployment in 2020 were not because of his cognitive impairment. (*Id.*) Thus, the accommodation sought here was not necessary to "directly ameliorate" an effect of Doe Newhof's disability. *See Vorchheimer*, 903 F.3d at 110.

But even if the inability to meet the income requirement were directly linked to Doe Newhof's disability, Defendants also argue that the requested accommodation was not necessary because they proposed an alternative—leasing a cheaper unit. Plaintiffs

cite to a recent Eleventh Circuit case to argue that courts "must consider first whether the plaintiff's own requested accommodation seems reasonable on its face before turning to consider a defendant's objections and counterproposals." *See Unger v. Majorca at Via Verde Homeowners Ass'n*, No. 21-13134, 2022 U.S. App. LEXIS 27304, at \*9 (11th Cir. Sept. 29, 2022) (internal quotations and citations omitted). But there, the court discussed alternatives within the context of the reasonableness inquiry. The Third Circuit has provided detailed reasoning for why consideration of alternatives is built into the analysis of the necessity element, which "requires that an accommodation be essential, not just preferable." *See Vorchheimer*, 903 F.3d at 105-11 (holding that if a housing provider's offered alternative accommodation provides a disabled person with an equal housing opportunity, it need not also grant the requested accommodation). Plaintiffs dismiss the fact that Defendants suggested a less expensive apartment by citing to *Kuhn v. McNary Estates Homeowners Ass'n*, 228 F. Supp. 3d 1142 (D.Or. 2017), to argue that "a housing provider is not permitted to survey the universe of possible accommodations or modifications and determine for that individual what, in its estimation, is the best or most reasonable approach," *id.* at 1149 (internal quotations and citation omitted). In that case, however, some of the proposed alternatives would not have met the plaintiff's needs and the other alternatives had been raised for the first time in the defendants' summary judgment motion. *See id.* at 1148-50. But to the extent the *Kuhn* court held that alternatives are not relevant to the necessity inquiry, the Court declines to follow that approach, finding it inconsistent with persuasive authority from the Sixth Circuit, which has cited favorably to *Vorchheimer* on this issue. *See Phillips v.*

11

*Acacia on the Green Condo. Ass'n*, No. 20-4182, 2022 U.S. App. LEXIS 14688, at *8-9 (6th Cir. May 26, 2022).

Here, it is undisputed that Defendants suggested the option of leasing a less expensive apartment prior to denying the application. Plaintiffs do not point to any evidence that suggests this was an inadequate alternative or would not allow Does Mercer and Newhof the equal opportunity of living at The Crossings. Plaintiffs preferred a certain two-bedroom condominium, but this preference was not related to Does Mercer and Newhof's disability. Because Plaintiffs have not shown a genuine issue of material fact as to whether the proposed alternative would provide an equal housing opportunity, they cannot prove that the requested accommodation was necessary. Thus, Defendants are entitled to summary judgment on Plaintiffs' failure to accommodate claims.

### C. Discrimination Claims

The FHAA prohibits discriminating against any person "in the provision of services or facilities in connection with [a] dwelling, because of a handicap of that person." 42 U.S.C. § 3604(f)(2)(A). The PWDCRA provides a parallel prohibition. Mich. Comp. Laws § 37.1502. When there is no direct evidence of discrimination, the claims are analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *Mencer v. Princeton Square Apts.*, 228 F.3d 631, 634 (6th Cir. 2000); *Bachman*, 653 N.W.2d at 436. Plaintiffs must first establish a prima facie case of discrimination by showing that (1) they were members of a protected .class, (2) they applied for and were qualified to rent or purchase the housing, (3) they were rejected, and (4) the housing remained available. *Mencer*, 228

F.3d at 634-35. The burden of proof then shifts to the housing provider to articulate a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802. Once the provider articulates such a reason, the burden of proof returns to the plaintiff to rebut the proffered reason by showing it was a pretext for discrimination. *Id.* at 804. Plaintiffs' claims turn on the second element.[4]

"Being 'qualified to rent' has been defined as 'ready and able to accept defendants' offer to rent or buy.'" *Mencer*, 228 F.3d at 635 (quoting *Schanz v. Village Apartments*, 998 F. Supp. 784, 788 (E.D. Mich. 1998)).[5] Plaintiffs do not deny that Does Mercer and Newhof did not meet the Crossings' income requirement for the unit they had chosen. Instead, Plaintiffs argue that they were financially ready to accept an offer to rent due to their willingness to pay an enhanced security deposit, co-sign the lease, or pre-pay the lease. But as Defendants note, this argument conflates Plaintiffs' failure to accommodate claims with their discrimination claims. *See Schanz*, 998 F. Supp. at 789. Because Does Mercer and Newhof did not meet the income requirement, they cannot establish a prima facie case of housing discrimination,[6] and Defendants are also entitled to summary judgment on these claims.

---

[4] Defendants aver that Doe Newhof is not disabled for purposes of Plaintiff's discrimination claims as well. But for the reasons discussed above, the Court finds that Plaintiffs can establish that he is disabled.

[5] Plaintiffs note that *Mencer* and *Schanz* predate *US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002). But the analysis in that case went to the reasonableness of a disabled employee's requested accommodation under the Americans with Disabilities Act, *see id.* at 393-94, and does not lessen the burden required to prove a prima facie case of housing discrimination.

[6] Even if Plaintiffs could prove a prima facie case, Defendants have articulated a legitimate, non-discriminatory reason for the denial—that Does Mercer and Newhof did not meet the income criteria applicable to all applicants—and Plaintiffs have not raised a question of fact as to whether this was a pretext for unlawful discrimination. Plaintiffs

13

### D. Section 3604(c) Claim[7]

Under 42 U.S.C. § 3604(c), it is unlawful "[t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . handicap . . . ." "[A] stray remark wholly unrelated to the decisional process is not actionable under § 3604(c)." *Campbell v. Robb*, 162 F. App'x 460, 467 (6th Cir. 2006) (internal quotations and citation omitted). Instead, the statement must suggest to an "ordinary listener" that a particular class is preferred for housing. *See id.* at 466.

Plaintiffs' claim under § 3604(c) is based entirely on Crosby's remark regarding the Shalom Springs being "more equipped to handle people" like Does Mercer and Newhof. This statement must be taken in context. *See, e.g.*, *Elliott v. Versa CIC, L.P.*, No. 16-cv-0288, 2019 U.S. Dist. LEXIS 16744, at *24-29 (S.D. Cal. Feb. 1, 2019) (citing cases and concluding that the statements at issue would not be understood by an ordinary listener as indicating a preference, limitation, or discrimination based on disability "when placed into context"). Here, the statement was made during a conversation about the financial information needed to qualify for the lease where Crosby even proposed the possibility of leasing a cheaper unit. (*See* ECF No. 67-3,

---

argue that Defendants "routinely provide" the exceptions requested here. But a review of the record demonstrates that the few exceptions that have been made were for existing residents with prior rental histories. (ECF No. 78-30.) Moreover, despite making the comment that Shalom Springs may have been "more equipped to handle" applicants like Does Mercer and Newhof, Crosby suggested they consider leasing a cheaper unit, but they refused to do so. And to the extent there was a delay in the processing of the application, there is no evidence Crosby was aware of Does Mercer and Newhof's disability at the time.

[7] Plaintiffs did not plead a separate cause of action for this claim and included it along with the FHAA discrimination claim in Count I of the complaint.

PageID.3876.) Thus, it cannot be construed as expressing a preference, limitation, or discrimination based on disability, and Defendants are entitled to judgment as a matter of law on any § 3604(c) claim stemming from that statement.

## IV. Conclusion

For the reasons above, Plaintiffs' motion for partial summary judgment is DENIED, Defendants' motion for summary judgment is GRANTED, and Plaintiffs' motion for leave to amend is DENIED.

SO ORDERED.

                                               s/Nancy G. Edmunds
                                               Nancy G. Edmunds
                                               United States District Judge

Dated: April 5, 2023

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 5, 2023, by electronic and/or ordinary mail.

                                               s/Lisa Bartlett
                                               Case Manager